**In re SHELBY MOTEL GROUP, INC., Debtor.**

**FIRST ALABAMA BANK, an Alabama banking corporation, and the Industrial Development Board of the Town of Vincent, Alabama, Plaintiffs,**

v.

**SHELBY MOTEL GROUP, INC., Defendant.**

**Bankruptcy No. 88–10974.**
**Adv. No. 89–0440.**

United States Bankruptcy Court, N.D. Alabama.

June 9, 1989.

---

Thomas Knight, Anniston, Ala., for debtor, Shelby Motel Group, Inc.

Robert Adams and Charles Denaburg, Birmingham, Ala., for plaintiffs First Alabama Bank and the Indus. Development Bd. of Town of Vincent, Ala.

FINDINGS OF FACT AND CONCLUSIONS BY THE COURT ON MOTION FOR SUMMARY JUDGMENT BY PLAINTIFFS AND ON DEFENDANT'S MOTION

L. CHANDLER WATSON, Jr.,
Bankruptcy Judge.

*Introduction—*

The above-styled case is pending before the Bankruptcy Court under title 11, chapter 11, United States Code, having been commenced November 4, 1988, by the voluntary petition under said chapter of a corporate debtor. The above-styled adversary proceeding was commenced in said case on April 5, 1989, by the plaintiffs' complaint, seeking to have this Court declare that the contract under which the debtor obtained possession of the real and personal property which comprises a motel facility in Shelby County, Alabama, is an unexpired lease of said property by the plaintiff Industrial Development Board of the Town of Vincent, Alabama (hereinafter referred to as I.D.B.) to the debtor. The day after filing their complaint, the plaintiffs filed a motion for summary judgment upon the complaint.

The day following that, apparently without service of the complaint and a summons, the debtor-defendant filed a pleading which it titled as a motion for summary judgment. The debtor has not filed an answer to the complaint.

On April 13, 1989, this proceeding came on before the Court for a hearing upon both motions, with the plaintiffs and the defendant represented by counsel. The issues were argued to the Court as if the facts alleged in the plaintiffs' complaint were confessed by the debtor and as if the issue was solely a question of law upon that factual basis. The parties have submitted written briefs which have been considered by the Court, and the Court has determined that the plaintiffs are entitled to have the contract adjudged to be an unexpired lease rather than a lease-sales contract as to the realty and a security agreement (conditional-sales contract) as to the personalty. The Court also has determined, as further prayed for in the complaint, that the debtor should be required to surrender possession of the property to I.D.B.

*Findings of Fact—*

The Court finds the facts from the pleadings and from the implied stipulations of the parties as follows:

1. As of September 1, 1986, the I.D.B. and the debtor entered into a contract titled "LEASE AGREEMENT", consisting of 72 type-written pages;

2. A determination that this contract is a lease of the real and personal property described therein rather than being a debt instrument to secure the purchase price of said property is the principal relief sought in the plaintiffs' complaint, and said contract refers to and is coupled with a "Mortgage and Trust Indenture" of the same date, covering the same property, and being from the I.D.B. to the plaintiff First Alabama Bank (hereinafter referred to as the bank);

3. Essentially, the "lease term" was to run through September 1, 2016;

4. This contract was intended to form the basis for the I.D.B. to issue bonds in the principal amount of $4,400,000.00, which would be sold and the proceeds used to finance the construction by the I.D.B. of a motel facility for the use of and operation by the debtor;

5. The project proposed that the payment of the bonds would be secured by a mortgage on the real and personal property of the motel facility, which was to be executed by the I.D.B. to the bank, which in turn would be the trustee for the holders of the bonds sold;

6. This arrangement was intended to be made pursuant to the provisions of title 11 of the Code of Alabama, Article 4, Chapter 54 (1975) and had as its ostensible purpose the promotion of "industrial development" in Shelby County, in which is located the Town of Vincent, through the construction and operation in Shelby County of a new motel facility having in excess of 100 rooms;

7. The genius of the arrangement was to be that the project bonds would be "municipal bonds" which would offer an income tax advantage to the holders upon the interest paid to them on the bonds, thereby making the bonds marketable at an interest rate below the market rate at which the debtor could have borrowed the funds for the construction and furnishing of the motel facility and thus attracting the debtor to Shelby County for the construction and operation of a new motel facility;

8. The contract between the I.D.B. and the debtor contained provisions which would permit the debtor to purchase for the sum of $100.00 (plus the expenses of the I.D.B. in concluding a sale) the real and personal property constituting the motel facility, upon payment of the bonds and the fees and expenses of the trustee, and it further provided the right to the debtor, while the contract was not in default, to purchase portions of the real property at the site of the motel facility for no consideration, upon establishing that a sale of the the real property intended thus to be be purchased would not impair the operation of the motel;

9. The contract was substantially performed to the point that the motel facility was constructed and put into operation, the bonds were issued and sold, and the mortgage and trust agreement were executed and delivered to the bank;

10. The debtor apparently had no other purpose and no other business than the acquisition of the motel facility and its operation, and when the latter generated insufficient funds for the debtor to make biannual interest payments and annual payments of principal on the $4,400,000.00 bonded indebtedness and other payments, all required of it by the contract, the debtor became in default in its payments to the bank;

11. Faced with demands for payment under the contract, the financially-distressed debtor commenced this chapter 11 reorganization case, and being totally unable to make the payments called for under its agreement with the I.D.B., the debtor made no effort to assume the contract as an executory contract or unexpired lease within the 60 days permitted for the assumption of "an unexpired lease of nonresidential real property under which the debtor is the lessee," as provided in 11 U.S.C. § 365(d)(4); and

12. As "debtor in possession," the debtor, with supervision by the bank, has been operating the motel facility under restraints and conditions imposed by the Court at the request of the bank.

*Conclusions by the Court—*

In this bankruptcy case, it is obvious that the debtor neither has the means to meet the payment requirements of its contract with the I.D.B. nor has any reasonable prospect of being able to meet such payments. Subsection (b)(1) of Section 365, title 11, United States Code, conditions the assumption of a defaulted executory contract or unexpired lease of the debtor by the trustee (here the debtor in possession[1]) upon a cure or adequate assurance of a prompt cure of the default, compensation or adequate assurance of prompt compensation for pecuniary loss resulting from the default, and adequate assurance of future performance of the contract. It, therefore, would have been futile for the debtor to undertake an assumption of its contract with the I.D.B., as an executory contract or unexpired lease with respect to the motel facility. The motel facility, however, is the *raison d'être* of the debtor, but the bank is obligated to collect the principal and interest payments falling due on the bonds but

1. See definition of "debtor in possession", 11 U.S.C. § 1101(1), and the rights and powers of a "debtor in possession", 11 U.S.C. § 1107(a).

not being paid by the debtor. The referred-to section 365(d)(4) provides that "the trustee shall immediately surrender such nonresidential real property to the lessor" when a related unexpired lease of such property to the debtor is not timely assumed and is thereby "deemed rejected" under the terms of the statute. With the debtor in possession of the motel facility and not making the required payments on the "industrial development" bonds, it is no surprise that the bank (and the I.D.B.) have urged the Court to declare that the contract is a lease or that the debtor strenuously urges the Court to declare that the contract memorializes an agreement to sell the motel facility to the debtor, conditionally, and provides the terms of the financing agreement by which the debtor would be enabled to complete the purchase.

The motion for summary judgment by the plaintiffs is understood by the Court to be a request that the Court conclude, as a matter of law, that any agreement between the debtor and the I.D.B., having the purposes outlined and resting upon a general state of facts such as those found by the Court, must be treated by the parties and by the Court as a true lease to the debtor of the subject property and not an embodiment of a lease-sale of the real property and a conditional-sale of the personalty involved. The debtor having made no answer to the complaint, the Court construes its motion for summary judgment as being a motion for dismissal of the complaint, for "failure to state a claim upon which relief can be granted." [2]

As to the personal property included in the motel facility, the debtor directs the Court's attention to Code of Alabama § 7-1-201(37) (1975),[3] which contains provisions to the effect that the inclusion in a "lease" of an option for the lessee to become the owner of the property, upon compliance with the terms of the lease and for no or for a nominal consideration, "make[s] the lease one intended for security." A contention that the purchase option, for the motel facility at an additional price of $100.00 plus the legal expenses of the sale, would not be for a "nominal consideration" here appears to the Court to be an unsupportable proposition. The debtor further directs the Court's attention to sundry cases holding a so-called lease to be a security agreement, covering the purchase price of property sold on credit, when the "lessee" may purchase the leased property by paying the rent and a nominal additional sum; and the debtor particularly relies upon the chief bankruptcy judge's opinion in *In re Central Foundry Company*, 48 B.R. 895 (Bankr.N.D.Ala.1985), wherein an Alabama industrial-development-bond contract was held to be a contract for the sale of property on credit and not a true lease. Thus, it might very well be that, without more, the present Court could adjudicate that this contract is not a true lease, such as would be required to be assumed under the provisions of the referred-to section 365 of the bankruptcy statute. If so held, the debtor then would be in a position to propose a plan of reorganization for payment to the bank of the "value" of the motel facility in order to become the owner of this property, and undoubtedly the value of the motel facility would be determined by the Court to be several million dollars less than the sums provided to be paid by the debtor under the contract, and the debtor could begin an installment payment of this "value" (with market-rate interest added), without curing anything or giving any assurances except that the plan was feasible. If that could not be brought off, the debtor might arrange a sale to a purchaser who would be more friendly to the debtor's continued business existence than are the plaintiffs in this proceeding.

The classification by this Court of the contract as a "lease" or as a sale-financing instrument, however, is not a *tabula rasa* decision. Circuit Judge Clark's opinion in *In re Martin Bros. Toolmakers, Inc.*, 796 F.2d 1435 (11th Cir.1986) forecloses this Court from any serious consideration that this contract is not to be treated as a lease. There, the Circuit Court affirmed a ruling

---

**2.** See Bankruptcy Rule 7012 and Federal Rule of Civil Procedure 12(b) and (d).

**3.** This is a part of Alabama's Uniform Commercial Code.

by the district court for this district which had affirmed a determination by Bankruptcy Judge Breland that an Alabama industrial-development-bond contract was a lease, as it had been denominated.

In the Circuit Court's opinion, it was pointed out that the I.D.B. was a party to the contract—not just the debtor and the bank or bond trustee—and that the I.D.B. was both lessor and mortgagor. The appellate court construed the Alabama statutes as not permitting the I.D.B. to assume the status of a mortgagee and concluded that for it to do so would cause a loss of the tax-exempt status of the income from the bonds. The Court noted that the I.D.B.'s leverage for industrial development would be destroyed, and that the public policy considerations for the industrial-development statutes would be defeated. Having accepted the benefits of the industrial-development-bond arrangement, the Court found "offensive to equitable principles"[4] the debtor's effort to rechristen the lease and held that the debtor was estopped to treat it as a mortgage outside of the scope of 11 U.S.C. § 365.

The debtor here urges the Court to dismiss the complaint on the basis of two distinctions between the present case and the *Martin Bros.* case. In the latter case, the purchase option required a payment by the debtor of $5,000 for a facility which originally cost $500,000, when the "rental" payments had been completed. Also, the debtor there had not raised the lease versus mortgage (lease-sale) question at the time of a proceeding brought by the bank there to require the debtor to assume or to reject the "lease." This tune composed by the debtor may have some appeal to the ear, but in the face of the *Martin Bros.* holding, it cannot hold the Court's attention longer than the "Minute Waltz."

Since the plaintiffs are entitled to have the debtor "immediately surrender such nonresidential real property to the lessor," as provided in 11 U.S.C. § 365(d)(4), and since the personalty is an integral part of the motel facility, the debtor must surrender the personalty as well as the real es-

tate—besides there is no conceivable way for the debtor to assume the "lease" as to the personal property only.

The Court, consequently, has rendered a final judgment in favor of the plaintiffs.